IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB KAUFMAN, | No. C-08-03755 EDL |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. | |

Plaintiff Bob Kaufman filed this action on August 6, 2008, alleging that Defendants City and County of San Francisco, Police Chief Heather Fong, Officer Alexander Kwan, Officer Crystal McDonald, Officer Susan Lavin and Sergeant Kyle Ching violated the San Francisco tow laws and Plaintiff's due process rights when San Francisco police officers towed several of his vehicles. Plaintiff also sued Tegsco, LLC, which sold one of Plaintiff's towed vehicles, alleging conversion and trespass to chattels. Plaintiff dismissed Tegsco with prejudice on July 23, 2009 after reaching a settlement.

On November 26, 2008, the Court granted in part with leave to amend and denied in part Defendants' Motion to Dismiss. Plaintiff filed an amended complaint on December 12, 2008. On April 14, 2009, the Court stayed discovery with respect to issues relating to the liability of the City and County of San Francisco under Monell v. Department of Social Servs., 436 U.S. 658 (1978).

On August 25, 2009, both Plaintiff and Defendants filed Motions for Summary Judgment. The matters were fully briefed, and the Court held a hearing on September 29, 2009. On October 2,

1  2009, Plaintiff filed a supplemental brief with leave of Court. For the reasons stated at the hearing
2  and in this Order, Plaintiff's Motion for Summary Judgment is denied, and Defendants' Motion for
3  Summary Judgment is granted in part and denied in part.

**FACTS**

Plaintiff owns approximately fifteen vehicles, at least five of which he keeps parked in the Bayview district in San Francisco. See Osborn Decl. Ex. B at 16-17. He is addicted to acquiring vehicles. See Osborn Decl. Ex. B at 269. Over the last two years, he has had an average of seven cars parked on San Francisco streets at any one time. See Osborn Decl. Ex. B at 200. Over the years, he has had thirty to forty vehicles towed from the City streets. See Osborn Decl. Ex. B at 201.

Plaintiff believes that out of the thirty to forty tows of his vehicles, only about eight have been lawful, and he has made complaints about the allegedly unlawful ones. See Osborn Decl. Ex. B at 202. Plaintiff keeps extra copies of the City's tow hearing request form in anticipation of having more vehicles towed. See Osborn Decl. Ex. B at 215. Plaintiff has almost never prevailed in any of his lawsuits involving tows. See Osborn Decl. Ex. B at 187.

Plaintiff has been living in his cars since 2001, and off and on through the 1980s and 1990s. See Osborn Decl. Ex. B at 13, 21. As of the time of Plaintiff's deposition in March 2009, he was living in a 1978 school bus that he parked in the Bayview district. See Osborn Decl. Ex. B at 13-14.

The San Francisco Police Department ("SFPD") has received numerous complaints about Plaintiff's cars from community members in the Bayview district. See, e.g., Osborn Decl. Ex. E at 95, 174, 189. Community members complain that Plaintiff's vehicles are abandoned or trash-filled. See id. at 95, 174.

**June 18, 2007 Tow of Plaintiff's Ford Ranger**

On June 15, 2007, Officer Lavin went to 215 Sunnydale Street in the Bayview district in response to a complaint by a community member of a vehicle parked on the street that had not been moved. See Osborn Decl. Ex. E at 95. She placed a warning notice on the vehicle, and marked the tires and streets with chalk. See id. at 52, 71; Kaufman Decl. in Supp. of Mot. for Summ. J. at ¶ 3; Ex. A. The warning notice stated that the vehicle must be moved one full block or the equivalent of one tenth of a mile by June 18, 2007 or the vehicle would be towed. See Osborn Decl. Ex. E at 55;

Ex. K at KAU00002. After seeing the warning notice, Plaintiff moved his vehicle to the other side of Sunnydale on the other side of Bayshore Boulevard. See Osborn Decl. Ex. B at 41; Kaufman Decl. in Supp. of Mot. for Summ. J. at ¶ 4. Then he returned the vehicle to the other side of the same block of Sunnydale Street where it had been when he saw the warning notice. See id. at 41, 42.

Later, the complainant reported to Officer Lavin that the vehicle had not been moved. See Osborn Decl. Ex. E at 110. Officer Lavin found that the vehicle was in the same location as it was when she placed the warning notice. See id. at 70. On June 18, 2007, she authorized the tow of the vehicle. See id.; see also Kaufman Decl. ¶ 5; Green Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. E at 68.

Officer Lavin did not record the mileage from the odometer of the Ford Ranger, although the warning notice and the tow slip contained a place for her to do so. See Kaufman Decl. Ex. A, B. She did not fill out the odometer reading in the tow slip because she could not see the odometer. See Osborn Decl. Ex. E at 75. Plaintiff stated that the odometer was visible and in working order at the time, although he did not explain how he knew that the odometer was visible to someone in Officer Lavin's position at the time she authorized the tow. See Kaufman Decl. ¶ 6. The odometer had exceeded the mechanical limits, meaning that it had rolled over to zero again after reaching 99,999. See Osborn Decl. Ex. K at KAU00093; Supp. Kaufman Decl. in Opp. to Def's Motion for Summ. J. ¶ 5.[1]

When the vehicle was towed, it was not running properly due to a fuel delivery problem. See Osborn Decl. Ex. B at 36, 37. Plaintiff was using the vehicle to store car parts, flares and motor oil.

---

[1] Although Plaintiff states in his declaration that the odometer was visible and in working order (see Kaufman Decl. ¶ 16), he had previously stated in a form to the Department of Motor Vehicles that the odometer had exceeded mechanical limits (see Osborn Decl. Ex. G at KAU00093). Defendants argue that Plaintiff's declaration on this point is a sham. A party cannot manufacture an issue of fact through a declaration contradicting prior deposition testimony. Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). This rule is limited to "'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." Id. at 267. The rule does not preclude a contradictory affidavit that explains earlier deposition testimony or is the result of an honest discrepancy or mistake. See id. While there is a possible inconsistency, the declaration does not directly contradict Plaintiff's statement to the DMV, which did not specifically claim that the odometer was not working, just that it had exceeded mechanical limits. It is possible, as Plaintiff points out, that it was reset to zero.

3

See id. at 39-40.

Defendants note that Plaintiff perjured himself as to the value of the Ford Ranger. He stated to the Department of Motor Vehicles on his Application for Title or Registration (see Osborn Decl. Ex. K at KAU00093) that he purchased the vehicle for $5. Then he testified at his deposition that he purchased it for $150. See Osborn Decl. Ex. B at 35.[2]

On June 26, 2007, Plaintiff faxed a request for a supervisor's review of the June 18, 2007 tow to the tow desk at 850 Bryant Street on the grounds that the warning notice did not record an odometer reading and that Plaintiff moved the vehicle from where it was parked after receiving the warning notice. See Osborn Decl. Ex. B at 45, 54; Kaufman Decl. ¶ 8. On June 29, 2007, Plaintiff also mailed his request for review to the SFPD. See Osborn Decl. Ex. B at 54; Kaufman Decl. ¶ 9; Ex. E. Plaintiff later telephoned the SFPD to ascertain the results of the supervisor's review. See id. at 56. He did not go in person to 850 Bryant Street regarding the tow of the Ford Ranger. See id. at 56.

Officer Centurioni completed his investigation of the June 18, 2007 tow on July 5, 2007. See Supp. Green Decl. in Opp. to Def.'s Mot. for Summ. J. Ex. C at 33; Second Supp. Green Decl. Ex. C at KAU000044 (hearing date of July 5, 2007). The request for refund of tow fees was denied based on Officer Lavin's statements that the vehicle had not been moved. See Osborn Decl. Ex. C at 37.

**May 29, 2008 tow of Plaintiff's Geo Metro and car trailer**

On May 25, 2008, Officer McDonald, under Officer Kwan's supervision, placed warning notices on a Geo Metro and a car trailer on which the Metro was stored that were parked at 499 Tunnel Street. See Osborn Decl. Ex. F at 28, 30. No odometer reading was written on the notice because the officers' view of the Metro's odometer was obstructed (see Osborn Decl. Ex. F at 31), and the trailer did not have an odometer (see Osborn Decl. Ex. F at 39).

Plaintiff states that he did not receive a warning notice prior to the tow of the vehicles. See Kaufman Decl. ¶ 16. Amy Molloy, a senior clerk at the Department of Parking and Traffic ("DPT"),

---

[2] Defendants argue that Plaintiff's perjury requires dismissal of this case. See Combs v. Rockwell Int'l Corp., 927 F.2d 48, 488-89 (9th Cir. 1991). Combs, however, is inapposite because it involved fraud by counsel who made changes to the party's deposition to materially alter his answers to matters going to critical issues in the case. The question of how much Plaintiff paid for the Ranger does not rise to the level of fraud that justified dismissal in Combs.

4

stated in her declaration that she conducted a records search of DPT records related to Plaintiff and did not find any warning notices for the May 29, 2008 tow. See Green Decl. Ex. A at ¶ 5; Ex. S at 17-18.

Officer McDonald and Officer Kwan also marked with chalk the tires and the street around the Geo Metro and the trailer, as well as the trailer bed on which the Metro was sitting. See Osborn Decl. Ex. F at 37, 38. The Metro was being stored on top of the trailer because Plaintiff had let the registration for the Metro lapse. See Osborn Decl. Ex. B at 126; Ex. F at 37.

On May 29, 2008, Officer Kwan returned to 499 Tunnel Street and found the vehicles parked in the same location with the tire and street markings intact. See Osborn Decl. Ex. F at 41, 42, 43, 44. Officer Kwan authorized the tow of the vehicles. See id. at 51, 52; see also Kaufman Decl. ¶ 14; Green Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. Q at 42.

On June 3, 2008, Plaintiff requested post-tow hearings for the Geo Metro and the trailer. See Kaufman Decl. ¶ 18. In early June 2008, Officer Centurioni called and spoke to Officer Kwan about the circumstances of the tow. See Osborn Decl. Ex. F at 52, 53, 54. Officer Kwan also sent a note to Officer Centurioni regarding the circumstances of the May 29, 2008 tow, along with the tow slips and warning notices that had been placed on the vehicles. See Centurioni Decl. ¶ 6.

Officer Centurioni conducted a hearing on June 3, 2008. Supp. Osborn Decl. Ex. A, D. On June 5, 2008, Officer Centurioni notified Plaintiff of the results of the tow hearing. See Osborn Decl. Ex. C at 49. Officer Centurioni told Plaintiff that his request for refund of tow fees was granted as to the Geo Metro, and that he could pick it up whenever he wanted. See Osborn Decl. Ex. C at 48; Ex. B at 147. Plaintiff did not pick up the Metro because he did not have anywhere to put it since the registration was expired and it would have been ticketed and towed if he parked it on the street. See Osborn Decl. Ex. B at 149. Officer Centurioni also informed Plaintiff that his request for refund of tow fees for the trailer was denied. See id. at Ex. C at 56; Ex. B at 148. Plaintiff states that he did not receive any response to his request for a supervisor's review until July 2008, and that the response was dated July 2, 2008. See Kaufman Decl. ¶ 19; Supp. Osborn Decl. Ex. A, D.

**June 1, 2008 tow of Plaintiff's Ford Motor Home**

1    On May 25, 2008, Officer McDonald, under the supervision of Officer Kwan, placed a
2 warning notice on Plaintiff's Ford motor home at 500 Tunnel Street. See Osborn Decl. Ex. F at 67,
3 68, 70, 71. Plaintiff had purchased the motor home in 2003 for approximately $500. See Osborn
4 Decl. Ex. B at 135. At the time of the tow, Plaintiff used the motor home for cooking and for storing
5 his property. See id. at 138-39. Officer McDonald also marked the tires and street around the
6 vehicle with chalk. See id. at 70. Plaintiff states that he did not receive a warning notice prior to the
7 tow of the vehicle. See Kaufman Decl. ¶ 16. Amy Molloy, a senior clerk at the DPT, stated in her
8 declaration that she conducted a records search of DPT records related to Plaintiff and did not find a
9 warning notice for the June 1, 2008 tow. See Green Decl. Ex. S at 17-18; Ex. A at ¶ 5.

10    On June 1, 2008, Officer Kwan returned to 500 Tunnel Street and found the Ford motor
11 home parked in the same location with the tire and street markings intact and authorized the tow.
12 See Osborn Decl. Ex. F at 70, 71, 74; Kaufman Decl. ¶ 15. Plaintiff, however, testified that he
13 moved the motor home from one side of the Tunnel Street to the other less than three days before the
14 tow. See id. at 141.

15    On June 3, 2008, Plaintiff requested a post-tow hearing for the June 1, 2008 tow. See
16 Kaufman Decl. ¶ 18. Officer Centurioni conducted a hearing on June 3, 2008, including reviewing a
17 statement by Officer Kwan, and denied Plaintiff's request for a refund of tow fees based on the
18 validity of the tow. See Osborn Decl. Ex. C at 52, 62; Kaufman Decl. Ex. N. Sergeant Ching
19 notified Plaintiff of the results of the hearing around July 2, 2008. See Osborn Decl. Ex. B at 145-
20 46; Kaufman Decl. ¶ 19.

**SFPD Tow hearings**

22    There is a dedicated tow desk at 850 Bryant Street in San Francisco. See Centurioni Decl. ¶
23 3. The City's post-tow hearing policy states that a hearing can be requested by going to 850 Bryant
24 during business hours. See Green Decl. Ex. C; Ex. G. All post-tow hearing determinations are
25 conducted by a hearing officer who is not involved in towing vehicles. See Errata for Osborn Decl.
26 Ex. B at 170. If a hearing officer determines that a vehicle has been unlawfully towed, the SFPD
27 refunds the fees associated with the tow and storage of the vehicle. See id. at 173. If a person is
28 dissatisfied with the result, he can request a supervisor's review of the tow fees. See Errata for

6

Osborn Decl. Ex. B at 170.

Officer Centurioni handles written tow hearing requests when parked vehicles are towed by the SFPD. See Osborn Decl. Ex. C at 20. He receives those requests daily from the officers who are assigned to the STOP desk. See id. at 23. He does not conduct in-person tow hearings, but in-person tow hearings are available. See id. at 85; Centurioni Decl. ¶ 3. Officers assigned to the STOP desk provide in-person tow hearings. See Osborn Decl. Ex. D at 72, 73; Errata for Osborn Decl. Ex. B at 173.

Officer Centurioni testified that the time between when a person requests a tow hearing and when the person receives a response can be up to two weeks. See Green Decl. Ex. H at 27. Sergeant Ching testified that the process could take up to thirty days. See Green Decl. Ex. D at 41-42.

Plaintiff has previously requested and received in-person tow hearings. See Osborn Decl. Ex. B at 100. He stopped requesting in-person tow hearings before any of the tows at issue in this case. See id. at 101, 102. Plaintiff did not submit a property release form to the SFPD to obtain the property inside the Ford Ranger, and only submitted a property release form for the Geo Metro in approximately late February 2009. See Osborn Decl. Ex. B at 189.

**LEGAL STANDARD**

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

**DISCUSSION**

    **1.    Claim for violation of California Vehicle Code section 22850**

California Vehicle Code section 22850 states:

> Whenever an officer or employee removes a vehicle from a highway, or from public or private property, unless otherwise provided, he shall take the vehicle to the nearest garage or other place of safety or to a garage designated or maintained by the governmental agency of which the officer or employee is a member, where the vehicle shall be placed in storage.
>
> At the time of such removal, the officer or employee shall determine the amount of mileage on the vehicle.

Plaintiff argues that Defendants violated this section when Officer Lavin conducted the June 18, 2007 tow because she failed to comply with her mandatory duty to record the mileage from the Ford Ranger. It is undisputed that Officer Lavin did not record the mileage (or make any markings in the space provided for mileage) on the warning notice or the tow slip. See Osborn Decl. Ex. K at KAU0002 (warning notice); Kaufman Decl. Ex. B (tow slip).

    The issue is whether Plaintiff may bring a claim against Defendants for violation of this section pursuant to California Government Code section 815.6. California Government Code section 815.6 states:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

"A private cause of action lies against a public entity only if the underlying enactment sets forth the elements of liability set out in section 815.6." Guzman v. County of Monterey, 46 Cal.4th 887, 987

8

(2009). The elements of section 815.6 are:

> "First and foremost, application of section 815.6 requires that the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion. [Citation.]" ( Haggis, supra, 22 Cal.4th at p. 498, 93 Cal.Rptr.2d 327, 993 P.2d 983.) Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment "affirmatively imposes the duty and provides implementing guidelines." (O'Toole v. Superior Court (2006) 140 Cal.App.4th 488, 510, 44 Cal.Rptr.3d 531 (O'Toole); Clausing v. San Francisco Unified School Dist. (1990) 221 Cal.App.3d 1224, 1240, 271 Cal.Rptr. 72 (Clausing) ["If rules and guidelines for the implementation of an alleged mandatory duty are not set forth in an otherwise prohibitory statute, it cannot create a mandatory duty"].)
>
> *"Second, but equally important, section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered.* The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' [Citation.] Our inquiry in this regard goes to the legislative purpose of imposing the duty. That the enactment 'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6. [Citation.]" (Haggis, supra, 22 Cal.4th at p. 499, 93 Cal.Rptr.2d 327, 993 P.2d 983; see also Evid.Code, § 669, subd. (a)(1) [rebuttable presumption of negligence based on violation of statute, ordinance or regulation of public entity].) If these two prongs are met, the next question is whether the breach of the duty was a proximate cause of the plaintiff's injury. (See Groundwater Cases, supra, 154 Cal.App.4th at p. 689, 64 Cal.Rptr.3d 827; Becerra v. County of Santa Cruz (1998) 68 Cal.App.4th 1450, 1458, 81 Cal.Rptr.2d 165.)

Guzman, 46 Cal.4th at 898 (emphasis added); Walt Rankin & Assocs. v. City of Murrieta, 84 Cal.App.4th 605, 614, n. 5 (2000) ("When an enactment establishes a mandatory governmental duty and is designed to protect against the particular kind of injury the plaintiff suffered, section 815.6 provides that the public entity 'is liable' for an injury proximately caused by its negligent failure to discharge the duty. It is section 815.6, not the predicate enactment, that creates the private right of action.") (internal citations omitted). Liability under section 815.6 requires a showing that: (1) a law creates a mandatory duty; (2) the law is designed to protect against the kind of injury suffered by plaintiff; and (3) the breach of the duty is a proximate cause of the plaintiff's injury. See Haggis v. City of Los Angeles, 22 Cal.4th 490, 498 (2000).

Here, assuming that there is a mandatory duty under Vehicle Code section 22850 to determine the mileage on the vehicle at the time of removal, as a matter of law the statute was not designed to protect against the particular kind of injury that Plaintiff suffered. While Plaintiff argues

9

1 that the statute was designed to protect against unlawful tows, its legislative history establishes that
2 the section 22850 was amended in 1975 to include the odometer provision not to protect against
3 unlawful tows, but to protect consumers against the indiscriminate use of their vehicles by garage
4 proprietors or their employees *after* the vehicles are towed. See Governor's Chartered Bill File for
5 Assemb. Bill No. 805 (1975 Reg. Sess.), Chapter 239. Plaintiff makes no showing that his vehicles
6 were driven at all after they were towed or that he suffered any injury based on post-tow "joy-
7 riding" in his vehicles. Therefore, the mileage recordation requirement was not designed to protect
8 against the injury that Plaintiff suffered. Accordingly, the Court need not reach the causation prong
9 of the Guzman analysis.

10 Further, Officer Lavin is entitled to immunity for "exercising due care, in the execution or
11 enforcement of any law." Cal. Gov't Code § 820.4. As described above, even though Officer Lavin
12 did not record the mileage on the tow slip, she exercised due care in enforcing the towing laws.
13 Officer Lavin received a call from a community member stating that the Ford Ranger had been
14 parked on the street for a while. See Osborn Decl. Ex. E at 110. Officer Lavin marked the vehicle
15 with chalk when she placed the warning notice. See Osborn Decl. Ex. E at 70-71. Then she
16 received another telephone call from a community member stating that the vehicle had not been
17 moved three days after she placed the warning notice on it. See id. at 110. After that, Officer Lavin
18 went to the vehicle's location (which Plaintiff admits he had moved back to the same block of
19 Sunnydale Avenue) and authorized the tow. Based on this conduct, Officer Lavin exercised due
20 care in enforcing the towing laws and is entitled to immunity. Plaintiff acknowledges that a finding
21 of due care would warrant the grant of summary judgment in favor of Defendants based on Officer
22 Lavin's immunity. See Pl.'s Oct. 2, 2009 Letter at 1.

23 Accordingly, summary judgment is granted in favor of Defendants on Plaintiff's Vehicle
24 Code section 22850 claim on the grounds that the statute was not designed to protect against the type
25 of harm suffered by Plaintiff, as well as Officer Lavin's exercise of due care.

26 **2. Claim for violation of San Francisco Transportation Code section 11.1 (San Francisco Traffic Code section 37(a))**
27
28 "No person shall park or leave standing any vehicle on any public street or highway for more than 72 consecutive hours." See San Francisco Transp. Code § 10.2.16 (former San Francisco

10

Traffic Code § 37(a)). Vehicles parked in violation of this code section cannot be removed "unless there has been a conspicuous notice posted on the vehicle . . . ." S.F. Transp. Code. § 11.1. Plaintiff argues that the City violated its mandatory duty under Transportation Code section 11.1 when Officers Kwan and McDonald failed to place warning notices on Plaintiff's trailer, Geo Metro and Ford motor home before they were towed on May 29 and June 1, 2008.

Transportation Code section 11.1 creates a mandatory duty to place a warning notice on a vehicle prior to removal. The code section is obligatory, and does not vest discretion in police officers with respect to placing a warning notice on a vehicle parked in one spot for more than 72 hours. Here, examining the evidence in the light most favorable to Plaintiff, there is a triable issue of fact as to whether Officers Kwan and McDonald breached that mandatory duty with respect to the May 29 and June 1, 2008 tows.

Officer Kwan testified that he and Officer McDonald placed warning notices on Plaintiff's vehicles before towing them in 2008. See Osborn Decl. Ex. F at 30, 68, 70. Officer Kwan provided the notices to Officer Centurioni in connection with his investigation. See Supp. Osborn Decl. Ex. F. Plaintiff stated in his declaration that he did not receive any warning notices for the May 29 and June 1, 2008 tows. See Kaufman Decl. ¶ 16. However, Plaintiff has not pointed to any evidence that he monitored his vehicles often enough to observe a three-day notice; rather, the evidence is that he only keeps track of when to move his vehicles based on the street cleaning schedule. See Osborn Decl. Ex. B at 199-200. Thus, by itself, Plaintiff's contention that he did not see the notices is insufficient to raise a triable issue of fact. However, Plaintiff also relies on the testimony of Amy Molloy, a senior clerk at the Department of Parking and Traffic ("DPT"). Ms. Molloy stated that she is not involved in SFPD tow hearings, and that she does not regularly provide documents for SFPD tow hearings. See Osborn Decl. Ex. J at ¶ 2. She testified in her deposition that DPT is the central repository for SFPD warning notices, which are delivered from the police stations to the mail room at 850 Bryant Street in San Francisco, where Ms. Malloy picks them up. See Supp. Green Decl. Ex. D at 19-20. Sergeant Ching testified that copies of warning notices are "sent down to DPT so they have a record of it." See Attachment to Oct. 5, 2009 letter from Pl. (Ching Deposition at 121). Ms. Molloy conducted a records search of DPT records related to Plaintiff and did not find

11

any warning notices for the May 29, 2008 and June 1, 2008 tows, but did find a warning notice for the June 18, 2007 tow. See Green Decl. Ex. A at ¶ 5; Ex. S at 17-18.

While it is quite possible that the officers did place warning notices on Plaintiff's vehicles, but the notices were misplaced on the way to DPT or were misfiled, and Officer Kwan's giving copies of the notices to Officer Centurioni lends support to the officers on this point, the Court must draw all reasonable inferences in the light most favorable to Plaintiff. Ms. Molloy's testimony, coupled with Plaintiff's, raises a triable issue of fact as to whether the officers breached their mandatory duty under section 11.1 to place warning notices on Plaintiff's vehicles that were towed on May 29 and June 1, 2008, as well as whether they exercised due care in the enforcement of the tow laws. For these reasons, Defendants' motion for summary judgment on this claim is denied.

**3. Claims for violation of California Vehicle Code section 22852**

California Vehicle Code section 22852 provides in relevant part:

(a) Whenever an authorized member of a public agency directs the storage of a vehicle, as permitted by this chapter, or upon the storage of a vehicle as permitted under this section (except as provided in subdivision (f) or (g)), the agency or person directing the storage shall provide the vehicle's registered and legal owners of record, or their agents, with the opportunity for a poststorage hearing to determine the validity of the storage.

(b) A notice of the storage shall be mailed or personally delivered to the registered and legal owners within 48 hours, excluding weekends and holidays, and shall include all of the following information:

(1) The name, address, and telephone number of the agency providing the notice.

(2) The location of the place of storage and description of the vehicle, which shall include, if available, the name or make, the manufacturer, the license plate number, and the mileage.

(3) The authority and purpose for the removal of the vehicle.

(4) A statement that, in order to receive their poststorage hearing, the owners, or their agents, shall request the hearing in person, writing, or by telephone within 10 days of the date appearing on the notice.

(c) The poststorage hearing shall be conducted within 48 hours of the request, excluding weekends and holidays. The public agency may authorize its own officer or employee to conduct the hearing if the hearing officer is not the same person who directed the storage of the vehicle.

(d) Failure of either the registered or legal owner, or his or her agent, to request or to attend a scheduled hearing shall satisfy the poststorage hearing requirement.

12

To the extent that Plaintiff attempts to raise a "facial challenge" to Vehicle Code section 22852, that challenge is misplaced. Facial challenges to statutes are rare and primarily arise in the First Amendment context. See IDX, Inc. v. County of Clark, 836 F.2d 1185, 1190 (9th Cir. 1988) (quoting Younger v. Harris, 401 U.S. 37, 53 (1971)) ("Courts should not, however, countenance facial challenges in the ordinary course: 'it can seldom be appropriate ... to exercise any such power of prior approval or veto over the legislative process.'"). Therefore, the Court focuses on Plaintiff's challenge to section 22852 as it applies to his rights.

Plaintiff also makes an "as applied" challenge to Vehicle Code section 22852, arguing that he was not provided with an adequate notice of storage and that he was denied post-tow hearings within 48 hours of his requests. Section 22852(b) creates a mandatory duty to provide notice of storage to the registered and legal owners of the towed cars, and describes what must be contained in the notice. The City sent notices of storage to Plaintiff as the registered owner. See Cal. Veh. Code § 505 (defining registered owner as "a person registered by the department as the owner of a vehicle). An examination of the notices of storage for the tows in this case reveals that they failed to comply with section 22852(b). Specifically, the notices of storage for the Ford Ranger, the Geo Metro and the motor home do not indicate that a request for a poststorage hearing can be made in person, in writing or by telephone within ten days of the date of the notice. See Kaufman Decl. Ex. C, J, K. However, even assuming that Defendants breached their mandatory duty to provide an adequate notice of storage and that the statute was designed to protect against unlawful tows by providing notice that includes the methods to challenge a tow, Plaintiff has failed to establish a triable issue of fact as to causation. Plaintiff has had thirty to forty vehicles towed in San Francisco, and was familiar with the procedure to request a poststorage hearing. In fact, he kept copies of the request form to avoid having to go to 850 Bryant Street to fill out the form. See Osborn Decl. Ex. B at 215. Any failure to include the requirements of section 22852(b) in Plaintiff's notices of storage did not cause his injury. Accordingly, with respect to Plaintiff's claim based on section 22852(b), Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

The next question is whether section 22852(c) creates a mandatory duty pursuant to

California Government Code section 815.6 to conduct a post-tow hearing within 48 hours of the request. "Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" Guzman, 46 Cal.4th at 898 (citation omitted). Section 22852 does not provide for a system of notification for the results of a tow hearing, and does not specify how tow hearings are to be conducted, thereby reserving these aspects of the tow hearing to the City's discretion. The statute does, however, require that a poststorage hearing take place within 48 hours, and makes no distinction as to the method by which a person requests the hearing. The mandatory language of the statute, while by itself insufficient, suggests a legislative intent to make the hearing requirement mandatory, particularly because the same subsection of the statute contains permissive language with respect to who may conduct the hearing. Further, the statute is specific about the timing of the hearing, even though it does not dictate other hearing requirements. Therefore, the City had a mandatory duty to conduct poststorage hearings upon a timely request within 48 hours.

Further, there is no triable issue of fact that Plaintiff was within the class of individuals for which the statute was enacted. Section 22852 was amended to include the 48-hour time frame to comport with the Ninth Circuit's decision in Stypmann v. CCSF, 557 F.2d 1338 (9th Cir. 1977), which held that a five-day delay in providing a post-tow hearing was unconstitutional. See Governor's Chartered Bill File for Senate Bill 848 (1979 Reg. Sess.), Chapter 1022; Scofield v. City of Hillsborough, 862 F.2d 759, 764 n. 3 (9th Cir. 1988). Based on this legislative history and Stypmann, the Court concludes that the statute was designed to benefit those individuals, like Plaintiff, whose vehicles may have been unlawfully towed.

However, examining the evidence in the light most favorable to Plaintiff as the Court must, there is no triable issue of fact as to whether Defendants breached that duty with respect to any of the tows at issue. With respect to the June 18, 2007 tow, Plaintiff states that he requested a hearing by facsimile on June 26, 2007. See Kaufman Decl. ¶ 10. However, the exhibit that he cites in support shows that on that date, he faxed a request for a hearing on a different tow -- one that occurred on June 22, 2007, not on June 18, 2007. See Kaufman Decl. Ex. D. Plaintiff states that he also mailed the hearing request on June 29, 2007 (see Kaufman Decl. ¶ 9; Ex. E), but that mailing

14

1 was not within ten days of the June 18, 2007 tow as required by section 22852(b). Therefore,
2 Plaintiff's request for a hearing on the June 18, 2007 was not timely, and he was not entitled to a
3 hearing within 48 hours of the request pursuant to section 22852(c).

4     With respect to the May 29 and June 1, 2008 tows, the hearing request forms show that
5 Officer Centurioni conducted hearings on these tows on June 3, 2008, which was the same day that
6 Plaintiff made the requests. See Supp. Osborn Decl. Ex. A, D; Kaufman Decl. Ex. L-M. Officer
7 Centurioni further testified that he notified Plaintiff on June 5, 2008, within 48 hours of Plaintiff's
8 request for hearing, that his request was granted for the Metro, but was denied for the trailer.
9 See Osborn Decl. Ex. C at 49, 56. While Plaintiff conclusorily declares that no such hearings were
10 conducted, he does not establish any foundation for his statement. Plaintiff provides no authority
11 requiring that the hearings be conducted in person or in any particular manner, or that notification of
12 the results be provided in any particular time frame. Plaintiff stated in his declaration that he
13 received the decisions regarding his June 3, 2008 tow hearing requests in July 2008 when he
14 received denials dated July 2, 2008. See Kaufman Decl. ¶ 19. Plaintiff also testified in his
15 deposition that he received a telephone call from someone in the SFPD sometime in the summer of
16 2008 informing him that his request for a refund of the tow fees for the Geo Metro was granted.[3]
17 See Osborn Decl. Ex. B at 147. This evidence, however, only goes to when he was informed of the
18 results of the hearing, not when it took place. Thus, Plaintiff has not raised a triable issue of fact as
19 to whether Defendants failed to conduct a hearing within 48 hours of his hearing requests for the
20 May 29 and June 1, 2008 tows.

21     Further, there is no evidence that Plaintiff had current registrations for the Ford Ranger and
22 the Geo Metro, so he could not have retrieved those vehicles regardless of when Defendants
23 conducted hearings on the validity of the tows. See Cal. Veh. Code § 22852.3. In fact, Plaintiff
24 testified that he did not retrieve the Geo Metro because it was unregistered even though he was
25 informed that his request for a refund of tow fees had been granted. See Osborn Decl. Ex. B at 149.

---

[3] Defendants contend that Plaintiff's declaration on this point is a sham. The Court concludes that Plaintiff's declaration is not a sham on this point. His declaration statement that he did not receive any response from the SFPD with respect to the 2008 tows until the July 2008 letter is not in direct conflict with his deposition stating that he received a phone call in the summer of 2008.

15

Accordingly, summary judgment is granted in favor of Defendants on this claim.[4]

### 4. Claim for violation of due process under California Constitution

Defendants argue that they are entitled to summary judgment because there is no private right of action for damages for violation of the due process clause of the state Constitution. See, e.g., Katzberg v. Regents of the Univ. of Cal., 29 Cal.4th 300 (2002). Plaintiff responds that he is not seeking damages, but instead seeking injunctive relief, which may be granted for violations of due process under the state Constitution. See Katzberg, 29 Cal.4th at 307. Plaintiff argues that he was denied due process because even though he requested a hearing for the June 18, 2007 tow, he did not receive a hearing, and he was never notified of the results of any investigation done by the police. Further, Plaintiff argues that he did not receive post-tow hearings for the May 29 and June 1, 2008 tows until one month later. Therefore, Plaintiff seeks injunctive relief requiring the City to comply with the requirements of Vehicle Code sections 22850 and 22852, the San Francisco Transportation Code and due process in providing prior notice before towing and a prompt hearing thereafter. See Osborn Decl. Ex. A (Compl.) at Prayer for Relief.

Plaintiff, however, lacks standing to pursue a claim for injunctive relief because he has not sufficiently shown a triable issue of fact that he is likely to suffer future injury from the alleged misconduct by Defendants. See City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983). At first blush it might seem that Plaintiff, with his extensive record of tows, might be able to make such a showing. However, in Lyons, the Supreme Court stated:

> "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." [ ] Past wrongs were evidence bearing on "whether there is a real and immediate threat of repeated injury." [ ]. But the prospect of future injury rested "on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial,

---

[4] Defendants alternatively argue that Officer Ching is entitled to statutory immunity under Government Code § 820.8, which states in relevant part that: "a public employee is not liable for an injury caused by the act or omission of another person." Defendants argue that Sergeant Ching acts only as Officer Centurioni's supervisor. See Errata for Osborn Decl. Ex. B at 170. There is evidence, however, that Sergeant Ching makes the ultimate determination about whether to grant requests for tow fee refunds. See Supp. Green Decl. Ex. B at 174-75. Therefore, there is a triable issue of fact as to whether Government Code § 820.8 provides immunity to Sergeant Ching. See Cal. Gov't Code § 820.8 ("Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission.").

> or sentencing before petitioners." [ ] The most that could be said for plaintiffs' standing was "that if [plaintiffs] proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed." [ ]. We could not find a case or controversy in those circumstances: the threat to the plaintiffs was not "sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses...." [ ]. *It was to be assumed "that [plaintiffs] will conduct their activities within the law* and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners." [ ].

Lyons, 461 U.S. at 103-04 (internal citations omitted) (emphasis added). The allegation by the Lyons plaintiff that police used a chokehold on him five months before, without any allegation of another such incident involving Plaintiff after the first one, did not establish standing:

> Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers. Count V of the complaint alleged the traffic stop and choking incident five months before. That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

Lyons, 461 U.S. at 105. The Supreme Court specifically observed "that five months elapsed between October 6, 1976, and the filing of the complaint, yet there was no allegation of further unfortunate encounters between Lyons and the police." Id. at 108.

Here, Plaintiff conceded at the hearing that none of his cars had been towed by the SFPD since the 2008 tows at issue in this case, much longer than the five months that elapsed in Lyons without the plaintiff there suffering a recurrence of the challenged practice. Although there is evidence that Plaintiff's vehicles have been towed frequently in the past, the fact that the last tow by San Francisco officials of a vehicle belonging to Plaintiff occurred over fifteen months ago shows that Plaintiff does not face a significantly real and immediate threat that his vehicles will be towed again for purported violations of the San Francisco towing laws. Accordingly, Plaintiff lacks standing to obtain injunctive relief. Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied on this claim.

### 5. Claim for violation of federal due process

Plaintiff also argues that his federal due process rights were violated by Defendants' failure

17

to provide a prompt post-tow hearing. See Pl.'s Mot. for Summ. J. at 13-14. Defendants respond that Plaintiff lacks standing to assert a federal due process claim, and has not raised a triable issue of fact as to the violation. Constitutional standing requires: (1) an injury in fact, which is both concrete and particularized, and actual or imminent, not merely conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury can be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Specifically, Defendants argue that Plaintiff cannot establish the causation element of the standing analysis because he cannot show that the injury he suffered was caused by the unavailability or inadequacy of a post-deprivation hearing. Instead, Defendants argue that the tows were lawful and Plaintiff would not have been entitled to a tow fee refund in the first place. As described above, there is no triable issue of fact that Plaintiff received timely hearings for the May 29 and June 1, 2008 tows. Further, Plaintiff was not entitled to a prompt hearing of the June 18, 2007 tow because of his untimely hearing request. Accordingly, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied with respect to Plaintiff's federal due process claim.

**CONCLUSION**

Accordingly, Defendants' Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Motion for Summary Judgment is denied. The only remaining issue for trial is Plaintiff's claim for violation of San Francisco Transportation Code section 11.1 based on the failure to place warning notices on the vehicles that were towed on May 29 and June 1, 2008.

**IT IS SO ORDERED.**

Dated: October 19, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge